387 S.E.2d 547

**Emma HARPER**

v.

**Benjamin Ray ROGERS and Gale Rogers, His Wife.**

No. 18737.

Supreme Court of Appeals of West Virginia.

Dec. 5, 1989.

title at the time the contract for sale was executed.

David J. Romano, James N. Riley, Clarksburg, for Emma Harper.

Lewis A. Clark, Jones, Williams, West & Jones, Clarksburg, for Benjamin Ray Rogers and Gale Rogers.

PER CURIAM:

This case is before this Court upon the appeal from a September 18, 1987, order of the Circuit Court of Doddridge County, denying appellant's motion to set aside a prior order. The prior order, dated August 14, 1987, found that Everett Wine [1], plaintiff below, made a valid conveyance of his Doddridge County property to his son, Benjamin Ray Rogers and his wife, Gale Rogers, subject to the dower rights of Fern Rogers, the mother of Benjamin Rogers, and also subject to a life estate of the appellant. In concluding the conveyance was valid, the court determined that Everett Wine was competent to sign such deed and that there was no undue influence involved in the transaction. We affirm the order of the circuit court.

Everett Wine was an elderly gentleman who was afflicted with various ailments in his latter years. He suffered from a chronic obstructive lung disease, bouts of pneumonia, Laenner's cirrhosis, and possibly chronic brain syndrome. He had been under the care of Dr. Frederick Spencer since 1982, and last seen by him prior to the events that occurred on September 10 and 11, 1986, on April 2, 1986.

Mr. Wine had six known and living children, one of whom is the appellee, Benjamin Rogers. He testified at trial that at one time he intended to give at least part of his real property to Benjamin Rogers, which was a portion consisting of approximately ninety acres known as the Beverlin Farm. Everett Wine's property had previously been owned by Eb Rogers who was the husband of Benjamin Rogers' mother, Fern Rogers. When Eb Rogers died, the land descended to Eb Rogers' sons, Bill Rogers and Keith Rogers, subject to the dower rights of Fern Rogers. Everett Wine purchased the property from Bill Rogers and Keith Rogers, subject to Mrs.

---

1. Everett Wine died subsequent to trial. Emma Harper, Everett Wine's daughter, was substitut- ed as appellant for this appeal.

Rogers' dower interest. Mrs. Rogers had lived with Everett Wine at one time and they had one known son, the appellee, Benjamin Rogers. At one point in time, a handwritten deed was prepared and apparently signed by Everett Wine, which gave the property known as the Beverlin farm to Benjamin Rogers. This deed was never recorded. A second deed was prepared by an attorney on May 27, 1986. In that deed, Everett Wine conveyed all of his Doddridge County property, approximately 331 acres, to Benjamin and Gale Rogers, husband and wife, subject to the dower rights of Fern Rogers and a life estate of Everett Wine.

Testimony at trial revealed that Benjamin Rogers took this deed to his father's house sometime between May 27 and September 10. The deed was left in plain view at Mr. Wine's house and he was aware that it was there. There is some dispute as to whether Mr. Wine actually thought it was a deed, and there was testimony that he believed it was a will or some type of welfare paper.

On September 9, 1986, Charlene Fisher, a long-time acquaintance of Everett Wine, stopped in to visit him. She testified that she found the house in disarray, that Mr. Wine was living in quite unkempt conditions, and that he had been drinking alcohol. While cleaning in his room, she found the deed and read it. She questioned Everett Wine as to its existence and he is said to have replied that it was a deed or will, or something that Benjamin, his son, had brought for him to sign. At this time, the deed was not signed and Mr. Wine said that he had "not given anybody anything yet."

On September 10, Benjamin Rogers went to Everett Wine's home to discuss the conveyance. Mr. Wine at this point apparently agreed to sign the deed, so Mr. Rogers telephoned Fay Moore, a notary public, to see if she was available to notarize his father's signature. She was available at that time, so Mr. Rogers took his father to Fay Moore's home to evidence the signing of the deed. Fay Moore's testimony at trial revealed that Mr. Wine carried on a personal conversation with her and that there was nothing noteworthy or remarkable in his conduct. He did not read the deed in front of her, and she did not read it herself. Rather, she simply watched Everett Wine sign the deed and then notarized his signature.

Mr. Wine testified at trial, but died subsequent to trial. During his testimony, Everett Wine relayed his observations concerning the day he signed the deed. He testified that his son came to see him to take him to Fay Moore's house to sign the document. He said he did not give much thought to whether the document was a deed or a will. Mr. Wine admitted that he was not forced into signing it, that he signed it voluntarily without any threats.

Charlene Fisher testified that in the afternoon of September 10, she received a telephone call from Everett Wine. She said he was upset and asked her to come over to his house. When she arrived, he was "whining" around that he thought he had been "shafted" and that he had signed the paper that "Benny", Mr. Rogers, had left with him. Mrs. Fisher called the appellant, Emma Harper, Everett Wine's daughter, who lives in New Cumberland, West Virginia, and left a message for Emma Harper to call her. Charlene Fisher wanted to inform the appellant of the events that had occurred that day. Ms. Fisher also called Faye Moore, who confirmed that Mr. Wine had signed a deed that day.

On September 11, one of Everett Wine's other sons, Elton Wine, came to his father's house to take him to the dentist. Mr. Wine apparently told this son that he had signed a deed or a will the previous day. Elton Wine testified that he confirmed that his father had signed a document by calling his sister, Emma Harper. At the conclusion of the dental appointment, Mr. Wine was instructed by his dentist to go to Dr. Spencer, his medical doctor, for some pain medication. Elton Wine, prior to the doctor visit, had called Gale Rogers, appellee and grantee in the deed, to demand that she and her husband give back the paper Everett Wine had signed. Elton Wine told Mrs. Rogers he was on his way then to have his father declared incom-

petent by a doctor. While at the doctor's office, the situation with the conveyance must have been explained to Dr. Spencer, because the doctor wrote out a statement on a prescription pad to the effect that Everett Wine was "duped into signing papers," that he had not been of sound mind for one and one-half years, and that he was not at that time responsible for signing legal documents, due to the fact that he was "extremely forgetful."

Later, on the evening of September 11, appellee Gale Rogers, called Mr. Wine to discuss the conveyance. She testified that he told her he had signed the deed and that he had wanted to do so.

On the morning of September 12, Benjamin and Gale Rogers, the appellees, went to visit Everett Wine to discuss the deed. At this point, they had not yet recorded the deed. Both appellees testified that they offered to give the deed back, but that Mr. Wine did not express that rescinding it was his intention. When asked if he wanted them to have it recorded, Everett Wine replied that it was not any good if it was not recorded. After speaking with Mr. Wine, the appellees took the deed in question to the Doddridge County Courthouse and had it recorded.

Emma Harper, the appellant, testified that she found out about the conveyance on September 12. She said there was a message that she was needed in Doddridge County for her father. She went to her father's house on September 14 and her father told her he signed a deed or a will that "Benny", the appellee, had brought him. She testified that Mr. Wine told her that the appellee had "aggravated him enough" and he finally went with him and signed it.

On October 1, Dr. Spencer recanted his former written statement concerning Mr. Wine, and wrote out a contradictory statement. In this latter statement, he stated that he had treated Everett Wine and that Mr. Wine was of sound mind as far as he could tell, and that if his eyesight was sufficient, he could transact business. Dr. Spencer testified through an evidentiary deposition that this statement had been given by him at the persistent request of Mr. Rogers. He also stated that he believed every member of Everett Wine's family had been in his office trying to get a "foothold on [Everett Wine's] assets."

In the evidentiary deposition, Dr. Spencer testified about Mr. Wine's physical problems. He also gave testimony concerning Everett Wine's mental state. He stated that Mr. Wine's mental state fluctuated from "psychotic to perfectly appropriate." Dr. Spencer testified that he believed there were times when Mr. Wine understood "fairly well what he was doing," and then there were times when he was "out of touch with reality." Dr. Spencer last treated Everett Wine before the September 11 visit on April 2 of the same year.

Everett Wine, together with Emma Harper as his next friend, instituted civil action in the Circuit Court of Doddridge County against the appellees, whereby they sought to have the conveyance rescinded. Plaintiffs below alleged that Everett Wine had not possessed the mental capacity to comprehend the legal consequences of his conveyance, and that the appellee, Benjamin Rogers, had exerted undue influence over Everett Wine in obtaining his signature on the deed.

A non-jury trial before the Honorable Sam White was held on July 29, 1987. At the conclusion of the trial, the court announced its findings of fact and conclusions of law. The court found that Everett Wine was competent at the time he signed the deed and that Benjamin Rogers, the appellee, had exerted no undue influence over him. Furthermore, the court granted the appellees' motion to dismiss Emma Harper, next friend of Everett Wine, as a party to the action, based on the fact that Everett Wine was found to be suffering under no disability which would disable him from prosecuting the case himself.

The evidence in this case was at times incongruent with substantial dispute concerning the events relating to the making of the deed, and the motivation behind the institution of suit to have the deed rescinded. Everett Wine's testimony at trial revealed that subsequent to signing the deed,

he became angry at the appellees because he believed they desired to have him placed in a nursing home and he acknowledged this as a basis for his subsequent change of mind. The trial court found that the appellees failed to meet their burden of proof in establishing Mr. Wine's incompetency and based on the record before us we agree.

In Syllabus Point 2 of *Carrigan v. Davis*, 84 W.Va. 473, 100 S.E. 91 (1919), we stated that "[t]he presumption of law is in favor of the sanity and mental capacity of a grantor,...." The party attacking the validity of a deed bears the burden of proving that the grantor was insane or incompetent at the time he executed such instrument. The critical point of time in judging a grantor's mental facilities is the specific time of execution. Syllabus Point 3, *Ellison v. Lockard*, 127 W.Va. 611, 34 S.E.2d 326 (1945).

In the present case, Everett Wine testified at trial as to the events that transpired on September 10, 1986. He remembered Benjamin Rogers coming to see him, asking him to sign the deed. He recalled the trip to Fay Moore's house to sign and notarize the deed, and was further able to recall the conversation he and Mrs. Moore had at that time.

There was testimony that Mr. Wine was not feeling well the day before he signed the deed, that he was somewhat confused and living in unkempt and undesirable surroundings, and that he had been drinking alcohol. There was also testimony that he was upset the evening of September 10 and was not feeling well the following day because of a tooth infection. As his doctor stated, however, Mr. Wine's behavior for years had fluctuated from "psychotic to perfectly appropriate." Faye Moore, the notary public and perhaps the only disinterested witness involved, saw him sign the deed and notarized his signature. Mrs. Moore testified that there was nothing noteworthy or remarkable in Mr. Wine's actions on that day and that he carried on a normal, thoughtful conversation with her during the entire time he was at her home.

In Syllabus Point 4 of *Ellison*, we stated that "[t]he testimony of a subscribing witness to the execution of a writing is entitled to peculiar weight in considering the capacity of the party executing it." 127 W.Va. 611, 34 S.E.2d 326. *See also Kadogen v. Booker*, 135 W.Va. 438, 66 S.E.2d 297 (1951).

The evidence in this case does not entirely substantiate that Mr. Wine had read the deed in question before signing it. In his testimony he stated that he did not recall whether he read it or not. There was testimony which revealed that the deed was in plain view for a lengthy period of time prior to September 10 and that Mr. Wine knew where the deed had been placed in his house for him to read. He admitted he could read with the help of a magnifying glass and that he enjoyed reading the newspaper and his Bible. There was likewise apparent conflict as to whether Mr. Wine thought the instrument he signed was in fact a deed. Testimony at trial revealed that he thought it was either a deed or a will. During his testimony, Everett Wine referred to it both as a deed and a will.

In Syllabus Point 1 of *Hale v. Hale*, 62 W.Va. 609, 59 S.E. 1056 (1907), we stated that:

> Mere failure to read a deed or other instrument before signing it, by a person who is able to read and understand it, being only negligence of the injured party, not importing fraudulent conduct on the part of him who obtains the benefit of it, is not ground for setting the instrument aside. Equity never relieves a party from his own deliberate acts, done with full knowledge of the facts.

The trial court found that Benjamin Rogers had not exercised undue influence over the appellant in order to obtain his signature on the deed. Upon review of the events revealed at trial, we agree with the trial court's determination.

In Syllabus Point 5 of *Woodville v. Woodville*, 63 W.Va. 286, 60 S.E. 140 (1908), *overruled on other grounds, Winfree v. Dearth*, 118 W.Va. 71, 188 S.E. 880 (1936), we stated that:

> [t]o set aside a deed for undue influence, it must appear that the influence was

such as wholly to destroy the free agency of the grantor, and to substitute the will of another for his; and, unless such taking away of free agency appears, the showing of a motive and an opportunity to exert such undue influence, together with failing mental powers of the grantor, are not sufficient to overthrow the deed.

The circumstances that surrounded the execution of the deed on September 10 do not substantiate the appellant's claim of undue influence. Although the evidence shows that Benjamin Rogers did exert influence over his father by bringing the prepared deed to his father, by asking him to sign it, by taking his father to the notary public for the express purpose of having his father's signature on the deed witnessed, and in all likelihood by using any persuasive powers at his command, his conduct did not rise to the level required by law to constitute undue influence sufficient to meet this standard. Everett Wine recalled the events that transpired on the day in question and admitted on the witness stand that there were no threats, that he was not forced to sign the deed, but that he signed it voluntarily.

In Syllabus Point 3 of *Cyrus v. Tharp*, 147 W.Va. 110, 126 S.E.2d 31 (1962), we found that:

A grantor in a deed may be extremely old, his understanding, memory, and mind enfeebled and weakened by age, and his action occasionally strange and eccentric, and he may not be able to transact many affairs of life, yet if age has not rendered him imbecile, so that he does not know the nature and effect of the deed, this does not invalidate the deed. If he be capable, at the time, to know the nature, character and effect of the particular act, that is sufficient to sustain it.

We find that Everett Wine knew the nature, character and effect of signing the deed in question. Mr. Wine was extremely old, his memory was at various times clearly affected by his age and debilitating diseases, but at other times his recall of numerous events held no hint of forgetfulness or confusion. His actions as revealed through testimony and the comments made by him on the witness stand, were at times somewhat odd, but they by no means rendered him incompetent. Rather, his actions on the day in question, surrounding the period of time when he signed the deed, as revealed by Benjamin Rogers, Mr. Wine himself, and the notary public, Fay Moore, indicate that he was aware that he was signing the deed in question.

For the reasons stated, the judgment of the Circuit Court of Doddridge County is affirmed.

Affirmed.